## CHARLES W. TROTTER

*v.*

## CHARLES A. HECKSCHER and the LEHIGH ZINC AND IRON COMPANY (LIMITED.)

The court of appeals decreed that the defendants were entitled to the possession of a mine by reason of complainant's breach of condition in his lease, adding "without prejudice to the inquiry, after the defendants have taken such possession, from matters arising since the bill was filed."—*Held*, that complainant's claim that he can now comply with the condition must be brought before the court by bill and not by petition, although defendants only insisted by their cross-bill that they were entitled to the possession merely on account of complainant's breach of condition.

Rehearing on motion to dismiss petition.

*Messrs. Cortlandt & R. Wayne Parker*, for complainant.

*Mr. Charles D. Thompson* and *Mr. Henry C. Pitney*, (with whom was *Mr. George Northrop*, of Philadelphia), for defendants.

BIRD, V. C.

The matters now to be discussed were once considered, and an opinion filed on May 25th, 1886. Although counsel were then fully heard, the complainant asked and obtained leave to present the case again. Upon such presentation, three principal points were taken: first, that the court should not be controlled by mere matters of form, when the object sought to be obtained was of great consequence to the suitor; second, that the court of errors, in its decree reversing the decree of the court of chancery, expressly declared that the possession of the mine thereby

Trotter *v.* Heckscher.

given to the defendants should be "without prejudice to an in-
quiry, after the said The Lehigh Zinc and Iron Company have
taken such possession, from matters arising since the bill was
filed;" and third, because the defendants, by their cross-bill,
expressly aver that they were entitled to the possession of said
mine because of Trotter's inability to supply the quantity of ore
provided for by the contract, and were entitled to such possession
until it should be made to appear that such inability has been
removed, and made a prayer accordingly. These points fairly
embrace all that has been said upon the rehearing.

First, as to the observance of mere form. I think I share in
the common dislike to matters of form, when they serve no use-
ful purpose. But form, when it preserves order, and gives char-
acter, and insures uniformity and certainty, ought not only to be
admired, but to be regarded as essential to the just and fair
administration of the law. And when during a long period the
ablest judges occupying the highest positions have sanctioned, by
judicial decisions, certain forms or methods of procedure, in order
to accomplish a given end, I do not feel justified, in my position,
in being the first judge to declare that there shall be a new de-
parture. I cannot say that the precedents and authorities before
me are "flatly absurd and unjust." There must be means or
forms used to bring the parties and the issues which they desire
to present before the court. In this case the question is whether
it shall be done by petition or by bill. In the view heretofore
presented, it seemed to me impossible for the complainant to
make successful progress with his cause, and be heard upon the
merits by petition. It then seemed to me that both form and
reason required him to file a bill. And after the fullest consider-
ation and the most careful examination of authorities, although
it may be mere form, such form binds me still. The complain-
ant may say "I will take the consequence," but it is neverthe-
less my duty to declare the law as I understand it.

Second. What did the court of appeals intend should be under-
stood when they said in their decree that the defendants were
entitled to the possession of the mine "without prejudice to an
inquiry, after the said Lehigh Zinc and Iron Company have taken

Trotter v. Heckscher.

such possession, from matters arising since the bill was filed?" Did the court of last resort mean to instruct or direct this court what to do and how to do it? Did it intend thereby to instruct this court to proceed by petition and not by bill? I cannot so interpret the language used. So far as I am enabled to comprehend it, it is in no sense directory. That court corrects the errors of this court in matters of form as well as of substance, but it does not lay down or establish rules for the government of this court. By the language relied upon, I think the court of appeals intended to exclude the possible conclusion that the rights of the parties under the contract might have been determined by its final decree for all time to come. I am unable to give any other or greater consideration to such phrase. The question was not to be regarded as *res judicata*.

Third. Does the statement in the cross-bill of the defendants that they are entitled to the possession until the inability of the complainant shall have been removed, and a prayer in accordance therewith, so alter the case as to justify the court in hearing the complainant, in the original suit, in his effort to establish his right to the possession at this time, by petition rather than by bill? In other words, is the case altered because the defendants presented their case according to their contract, and asked the aid of the court to enforce that contract? I think not. Notwithstanding all the discussion and all the investigation which I have been able to give to the question, I cannot rid myself of the conviction that the allegation that since the original bill of complaint was filed the complainant therein (this petitioner) has become able to mine and furnish to the defendants ore according to the contract, is new matter, within the meaning of that phrase in all the cases where the question has been discussed. The court has said that at the time of filing the bill, the complainant was unable to fulfill his contract, and that the defendants were entitled to the possession of the mine; evidently whatever takes place subsequently is new matter, as that phrase is rendered in all the books and cases—as evidently such new matter has never been introduced into a case by way of amendment to original proceedings, and as evidently it can only be introduced

Trotter *v.* Heckscher.

by bill, for the plain reason that it is new matter, and should be set forth with as much precision or certainty as an original case. Indeed, in most instances, and in the one now under consideration quite plainly to my mind, such new matter is the foundation of an entirely original and independent proceeding, and could be presented and prosecuted accordingly, if it were not that one party or the other might desire the benefit of the proceedings in the former suit, to which either is entitled. It is enough to know that it is new matter; its importance is not and cannot, in a question of pleading, be material. It may greatly change the complexion of a case, or only slightly ; but who can tell, until the issue is made up and the proofs submitted ? Therefore, because it is such new matter, it is plainly consonant to reason that it should be presented with all the particularity of a new case, in order to apprise the court and the opposite party of the foundation of the case, and in order that it may be answered with equal particularity and certainty.

I say answered. The defendant in such case ought to be called upon, and if need be, compelled to answer, because, as in every other case in equity, the complainant has a right to put his conscience to the test, and if possible, to condemn him out of his own mouth, and end the litigation by his own responses. This certainly is infinitely more desirable than to proceed against him by simple petition, which is nothing more than a motion in writing, and which he is not required to answer, and which he cannot be compelled to answer, but which he may resist in many ways to the delay of justice, if not to its defeat. And should he volunteer to answer, his answer may be as evasive and misleading as human ingenuity can conceive.

In all this discussion it has been pressed upon my attention that the petitioner will suffer great loss by the delay incident to proceeding by bill. I admit the importance of this consideration. It is not surprising that the owner of a mine, the most valuable of its kind known, should desire to control, absolutely, the operations therein. Evidently he may be damaged in many ways and suffer loss which never can be repaired, and suffer it, too, perhaps without its being clearly made known, from mis-

management in mining by those in possession. But considering the rights and interests of the petitioner, it is my clear judgment that it is to his advantage to regard that delay as inevitable, and to prepare for it accordingly. It seems to me that if this court were to order otherwise, such order could not stand, in which event the consequences of delay would be manifold. Courts must proceed by general rules.

When it is remembered that it is believed that fortunes are involved in this controversy, and that the litigation between the parties in interest has already covered a period of several years, and that the very ablest and most sincere counsel have insisted that I am wrong in my views upon this subject, I am sure I will be excused for having again taken so much time in considering it.

The authorities relied upon were referred to in my former opinion. I will add the following : *Allen* v. *Taylor*, *2 Gr. Ch. 435 ; Underhill* v. *Atwater, 7 C. E. Gr. 16.* This case was reversed on appeal, but the point now under consideration does not seem to have been discussed in the court above. *Williamson* v. *New Jersey Southern Railroad Co., 10 C. E. Gr. 13.*

I am of opinion that the order heretofore made, dismissing the petition, ought not to be revoked, and shall so advise. The defendants are entitled to costs.